# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § § | |
| **vs.** | § § | **CASE NO. 6:08-CR-99** |
| **KERRY SCOTT BAKER** | § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order sets forth the basis for the Court's September 22, 2009 Order (Docket No. 44) that Defendant pay restitution totaling $462,000 to the three minor victims in this case.

## BACKGROUND

On March 4, 2009, Defendant Kerry Scott Baker ("Defendant" or "Baker") pled guilty to three counts of production of child pornography in violation of 18 U.S.C. § 2251(a). The subjects of his child pornography production were his three minor children. On June 24, 2009, he was sentenced to 360 months custody in the Bureau of Prisons, 60 months of supervised release, and a $300 special assessment. During sentencing, the Court reviewed a Victim Impact Statement for Parents of Child Victims (Docket No. 29), which had been completed by the minor victims' mother. After reviewing the hand-written statement, the Court became concerned that the children's mother either did not understand her children's right to seek restitution or was not interested in pursuing it on their behalf. The Court bifurcated the issue of restitution from the sentencing. On June 25, 2009, the Court appointed Wes Hill as attorney ad litem for the minor victims "John Doe," "Chris Doe," and "Jane Doe" to investigate whether the minor victims are entitled to restitution, whether it is in their best interest to pursue restitution, and if so, in what amounts, and the manner in which the

1

minor victims may obtain restitution from this or other defendants. All parties involved in the matter submitted briefing to the Court regarding the issue of restitution. On September 21, 2009, the Court conducted a hearing pursuant to 18 U.S.C. § 3664(d)(5) to determine the proper amount of restitution owed to the minor victims. On September 22, 2009, the Court issued an Order (Docket No. 44) awarding each minor victim $150,900 in restitution for past and future treatment and counseling costs, and $3,100 for Mr. Hill's attorney's fees. This Opinion details the factual and legal basis for the restitution awards.

*The Production of Child Pornography*[1]

In November 2006, as a result of a seizure of several pieces of computer equipment involved in a child pornography case in Maryland, the FBI discovered instant message conversations between the Maryland suspect and Baker. It was obvious from the text messages that the two were trading images of child pornography, and it appeared that Baker was taking pornographic pictures of his own children and sending them to the Maryland suspect as they were instant messaging. Further analysis of the computers taken from the Maryland suspect revealed a group of 55 images of child pornography that corresponded to the instant message conversations between the Maryland suspect and Baker.

The images were of two prepubescent boys, approximately five and six years of age, and a female infant of approximately fourteen months. The images of the boys showed one of the boys being anally penetrated by the finger and penis of an adult male, a boy's penis being manipulated by an adult hand, and a boy's face covered with what appeared to be ejaculate fluid. The images of the

---

[1] The factual background of the children's abuse is based upon an affidavit by FBI Special Agent Dave Goodson, the primary investigator in the matter (Docket No. 38-2). To protect the privacy of the minor victims, the Court is limiting the factual background to a brief overview of Special Agent Goodson's actual findings.

2

infant showed her bound at the hands and feet by restraints, being anally penetrated by the penis of an adult male, and her face covered with what appeared to be ejaculate fluid. The internal data of the images indicated they were taken at the same time as the instant message conversations.

Upon arrival at Baker's residence, Baker's two sons, now eight and seven years of age, and his daughter, now approximately three years of age, were identified as matching the images depicted in the child pornography. When one of the officers first identified himself in front of the seven year old victim, the child asked "Is this about daddy taking pictures of us?" Baker admitted to having produced all 55 pornographic images of his children.

*The Impact of Child Pornography on the Minor Victims*

Child pornography fosters the exploitation of innocent and vulnerable children all over the world. It causes irreparable harm to some of the weakest members of our society. Child pornography is a permanent photographic record of the victim's sexual abuse, and the distribution and circulation of the pornographic images forever exacerbates the harm to these child victims. *New York v. Ferber*, 458 U.S. 747, 759 (1982) (finding that "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children"). In the Supreme Court's landmark decision in *New York v. Ferber*, the Court extensively discussed the issue of child pornography and the long-term physiological, emotional, and mental harms associated with the sexual exploitation of children. 458 U.S. at 758. The Court cited to various authorities in the field of child exploitation, noting that:

> The use of children as . . . subjects of pornographic materials is very harmful to both the children and the society as a whole. It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.
>
> . . . .
>
> Pornography poses an even greater threat to the child victim than does sexual abuse

> or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*Id*. at 758–60, nn. 9 & 10 (internal quotations and citations omitted). The Fifth Circuit has also addressed the issue of child pornography, finding that "the 'victimization' of the children involved does not end when the photographer's camera is put away," and thus, the abuse of the child is perpetuated by the dissemination of the pornographic images. *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998).

Congress has also long recognized the harm inflicted on victims of child pornography. In the legislative history of the Child Pornography Prevention Act of 1996, Congress specifically cited and broadly quoted from the landmark *New York v. Ferber* decision finding that "[t]he use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of a child." S. Rep. No. 104-358, at 14 (1996) (citing *New York v. Ferber*, 458 U.S. 747, 759 (1982)). Congress further observed that "it has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *Id*. More recently, Congress again addressed the impact of child pornography in the legislative history behind the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501, 120 Stat. 587, 623 (2006). Congress found that "[t]he illegal production, transportation, distribution, receipt, advertising[,] and possession of child pornography . . . is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole." *Id*. Congress further observed that "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and repetition of their abuse." *Id*. at 624.

In addition to the courts' and Congress's recognition of the long-term harms associated with

child pornography, the National Center for Missing and Exploited Children's ("NCMEC") data indicates that incidents of online child pornography are increasing. *See* Brief of the National Center for Missing and Exploited Children on Issues of Restitution for Victims of Child Pornography Under 18 U.S.C. § 2259, *United States v. Doyle Randall Paroline*, No. 6:08cr61 (E.D. Tex. July 20, 2009) (Docket No. 30) (discussing the victimization of children by the possession and distribution of online child pornography). NCMEC was established in 1984 as a private, nonprofit organization to assist families, law enforcement, and other professionals in preventing the abduction, endangerment, and sexual exploitation of children. *Id*. at 2. NCMEC works with both federal and state governments and law enforcement agencies to prevent and combat the growing problem of child sexual exploitation. *Id*. Using two central programs, the CyberTipline and the Child Victim Identification Program ("CVIP"), NCMEC serves as the central repository for information relating to child pornography cases across the country. *Id*. at 2–5. In 2000, NCMEC sponsored a study that profiled arrested offenders who possessed child pornography and surveyed participating state and local law enforcement agencies. *See* Janis Wolak, et al., *Child Pornography Possessors Arrested in Internet Related Crimes*: *Findings from the National Online Juvenile Victimization Study* (2005). The study revealed that the dissemination of child pornography may increase the trauma experienced by the victims because the victims know "their pictures are circulating globally on the Internet with no hope of permanent removal." *Id*. at 27.

In addition to NCMEC's study, various other studies document the harm caused to a child by the possession and distribution of child pornography. One study demonstrates that a child's psychological harm after the actual sexual exploitation continues into adulthood and affects his ability to develop healthy relationships. John E. B. Myers, et al., *The APSAC Handbook on Child Maltreatment* 55–69 (2d ed. 2002). The child victims develop a number of psychological disorders,

including depression, withdrawal, and anger, and experience feelings of guilt, betrayal, powerlessness, worthlessness, and low self-esteem. *Id.* Another study suggests that the continual online distribution and possession of the child pornography images re-victimizes these child victims, stripping them of any control over the disclosure of their abuse and exposing them to further shame and humiliation. *See* Ethell Quayle, et al., *Child Pornography and Sexual Exploitation of Children Online* 59–60 (2008).

**APPLICABLE LAW**

The minor victims in this case seek restitution under 18 U.S.C. § 2259,[2] which governs restitution for all offenses involving the sexual exploitation and other abuse of children. 18 U.S.C. § 2259(a). Section 2259 clearly mandates the sentencing court to order a defendant convicted of an

---

[2] Section 2259 states:
(a) In general.–Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.
(b) Scope and nature of order.–
    (1) Directions.–The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).
    (2) Enforcement.–An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.
    (3) Definition.– For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for–
        (A) medical services relating to physical, psychiatric, or psychological care;
        (B) physical and occupational therapy or rehabilitation;
        (C) necessary transportation, temporary housing, and child care expenses;
        (D) lost income;
        (E) attorneys' fees, as well as other costs incurred; and
        (F) any other losses suffered by the victim as a proximate result of the offense.
    (4) Order mandatory.–
        (A) The issuance of a restitution order under this section is mandatory.
        (B) A court may not decline to issue an order under this section because of–
            (i) the economic circumstances of the defendant; or
            (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.
(c) Definition.– For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

offense involving the sexual exploitation of children to pay restitution to the victim of the crime. 18 U.S.C. § 2259(b)(4)(A). Further, it specifically prohibits the Court from declining to order restitution because of the defendant's economic circumstances or because the victim receives compensation for his or her injuries from another source. 18 U.S.C. § 2259(b)(4)(B). The Government must prove the amount of the victim's losses by a "preponderance of the evidence," and the Court shall resolve any dispute as to the proper amount of restitution by the same standard. 18 U.S.C. § 3664(e).

Section 2259 defines a "victim" as any "individual harmed as a result of a commission of a crime under [the Sexual Exploitation and Other Abuse of Children Chapter of Title 18]." 18 U.S.C. § 2259(c). The statute provides that restitution is available for "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). Compensable losses under section 2259 include, among other things, any costs incurred by the victim for "medical services relating to physical, psychiatric, or psychological care," "physical and occupational therapy or rehabilitation," and "attorneys' fees, as well as other costs incurred." 18 U.S.C. § 2259(b)(3).

As other courts confronting the restitution issue have observed, section 2259 and two other mandatory restitution statutes related to the Violence Against Women's Act of 1994[3] use far broader language than 18 U.S.C. § 3663A, the general mandatory restitution statute. *See United States v. Julian*, 242 F.3d 1245, 1247 (10th Cir. 2001). In particular, section 2259 allows restitution to be ordered for "the *full* amount of the victim's losses" for "*any* costs incurred by the victim for . . . physical, psychiatric, or psychological care." In addition, section 2259 has a catch-all provision that authorizes restitution for "*any other losses* suffered by the victim as a proximate result of the offense." Section 3663A mandates payment of "an amount equal to the cost of *necessary*

---

[3] *See* 18 U.S.C. §§ 2248 & 2264.

7

[treatments]" and other specific expenses. 18 U.S.C. § 3663A(b)(2).

The Fifth Circuit has yet to construe section 2259, so this Court has looked to the analysis of other courts around the country that have construed it for guidance. Although section 2259 does not specifically list "future psychological care" as a compensable loss, the statute is "phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse." *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999). In *Laney*, the Ninth Circuit upheld the district court's award of restitution for future counseling costs, noting that "Congress was well aware that children victimized by sexual abuse often do not recover quickly from their injuries." *Id*. The *Laney* court specified, however, that "district courts must estimate the amounts that victims will spend on future counseling with reasonable certainty, in accordance with the procedures set forth in § 3664." *Id*. at 967 n.14; *see also United States v. Pearson*, 570 F.3d 480, 487 (2nd Cir. 2009) (noting that the final restitution order should reflect a reasonable estimate of the cost of future counseling). Other circuits have also addressed the issue of compensation for future counseling costs and have come to the same conclusion. *See Pearson*, 570 F.3d at 486 ("We are persuaded by the analysis of our sister circuits and conclude that a restitution order pursuant to 18 U.S.C. § 2259 may include restitution for estimated future medical expenses."); *United States v. Doe*, 488 F.3d 1154, 1159–60 (9th Cir. 2007); *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001); *Julian*, 242 F.3d at 1246–48. This Court finds that the broad language of section 2259 indicates that Congress intended to prescribe full restitution for the victims of these insidious crimes, including compensation for future counseling and treatment costs.

## ANALYSIS

The relevant statute requires the Court to resolve any dispute as to the proper amount of restitution by the preponderance of the evidence standard. 18 U.S.C. § 3664(e). The Court

approaches the restitution determination in this case fully mindful of the statutory requirement that restitution must be equal to the "full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). The Court seeks to determine the amount of a restitution award that will make the minor victims whole. *See Hughey v. United States*, 495 U.S. 411, 416 (1990) ("[T]he ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event . . . ."). Thus, restitution in this type of case is payment for the harm caused to the victim by the production and dissemination of the child pornography. This particular case involves the actual abuser, producer, and distributor of the child pornography, as opposed to an end-user or possessor. Accordingly, there is no question of causation in this case. The entirety of losses these images cause these children, now and in the future, is a direct and proximate result of the crimes to which Baker pled guilty.[4]

Because Baker pled guilty to three counts of production of child pornography in violation of 18 U.S.C. § 2252(a), it is indisputable that these three children are "victims" under 18 U.S.C. § 2259. *See* 18 U.S.C. § 2259(c) (defining a "victim" as any "individual harmed as a result of a commission of a crime under [the Sexual Exploitation and Other Abuse of Children Chapter of Title 18]"). Moreover, because there is no issue of causation, it is indisputable that the children are entitled to restitution from Baker. *Cf. United States v. Paroline*, No. 6:08-cr-61 (E.D. Tex. filed December 7, 2009) (finding that the amount of restitution was not subject to calculation because the Government did not establish any specific losses proximately caused by the defendant's possession of the victim's images). However, all interested parties are in agreement that it is extremely difficult to quantify the amount of loss sustained by minor victims. The minor victims of these horrific crimes often lack

---

[4] This type of "production case" does not involve the exhaustive causation analysis that is central to a "possession case." *See United States v. Paroline*, No. 6:08-cr-61 (E.D. Tex. filed December 7, 2009) (concluding that "an award of restitution under section 2259 is appropriate only for the amount of the victim's losses proximately caused by the defendant's conduct").

the financial ability to obtain counsel and experts to assess a proper amount of restitution. The resources often available to the parties and the Court in a full blown jury trial are simply not available in this type of criminal proceeding. Nonetheless, Congress made clear that an order of restitution "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). Thus, it is incumbent on the Court to make the best possible assessment given the limited resources available in ascertaining the amount of restitution in this type of case.

Based on the plain reading of the 18 U.S.C. § 2259 and the relevant case law, the Court finds that an order of restitution including costs for both past and future mental health treatment of the three minor victims in this case is mandated by section 2259. Accordingly, the Court's task is to determine the amount supported by the record in this case. Before the Court is a detailed account of the inconceivable sexual abuse that these minor victims experienced at the hands of their father, and the Court is well aware of the long-lasting effects child pornography has on the victims of these insidious crimes. In addition, the Court has before it a reasonable, yet frustrated, attempt by a local psychologist to determine an appropriate amount of restitution to cover future treatment costs for the minor victims.

Mr. Hill, the attorney ad litem appointed in this case, furnished the Court with a two page report from a licensed psychologist by the name of Dr. Ronald Jereb. Dr. Jereb has experience evaluating victims of abuse for Texas Child Protective Services. Although Dr. Jereb indicated the "long-term or secondary costs are more difficult to estimate," the costs "clearly involve potential costs for mental health treatment." Dr. Jereb's Sealed Report, Docket No. 39-2, at 1. However, due to the disinterested and less than cooperative nature of the minor victims' custodial parent, Dr. Jereb was forced to base his restitution estimate on only a single evaluation of the minor victims and their custodial parent. Dr. Jereb's report nevertheless presented a reasonable formula for estimating the

restitution amount for each minor victim and estimated the total future costs to be $97,900 ($47,400 for additional health care and mental health care costs incurred by sexually abused victims;[5] $25,500 for mental health treatment costs for sexual and emotional abuse victims;[6] and $25,000 for additional abuse related costs[7]). *Id*. at 2.

In addition to estimating the amount of restitution in this case, Dr. Jereb made some general comments about the impact of child abuse on its victims, noting that "child abuse has long-lasting and adverse effects that are sometimes immediate and also extend into adulthood, compromising the lifetime productivity and quality of life of maltreatment victims as well as direct costs in health and mental health services." *Id*. at 1. Dr. Jereb went on to list some of the adverse outcomes that victim's of child abuse experience throughout their lifetime, which included poor physical and mental health, relationship difficulties due to trust and insecurity issues, cognitive dysfunction, and behavioral problems. *Id*.

From the nature of the events and evidence in this particular case, the Court finds that the minor victims in this case have psychological damage that will follow them for the rest of their lives. Determining restitution in a criminal case differs from a typical personal injury civil damages case in that the Court's only objective in a restitution determination is to make the victim whole. Although it goes without saying that no amount of money will ever truly make these victims whole,

---

[5] Dr. Jereb's Report cites to recent literature that estimates sexually abused women incur $790 more per year in health care and mental health care costs than non-abused women. Dr. Jereb used this estimate to calculate the minor victims' health and mental health care costs for the next 60 years, which totaled $47,400 per minor victim.

[6] Dr. Jereb's Report cites to recent literature that estimates a $5,800 one-time mental health treatment cost factor for sexual abuse victims and a $2700 one-time mental health treatment cost factor for emotional abuse victims. Dr. Jereb found that both costs were direct costs attributed to each minor victim and estimated that each minor victim would require at least three treatment regimens. Accordingly, his estimate for mental health treatment costs was $25,500 per minor victim.

[7] These additional costs relate to the possible occurrence of indirect costs associated with mental health issues arising from the minor victims' abuse.

the Court is nevertheless faced with the difficult task of determining an appropriate amount of restitution. In this particular case, the Court is concerned that Dr. Jereb's estimate is inadequate to cover the "full amount of the victim's losses." The Court's concern is illustrated by the $2,700 cost associated with Dr. Jereb's single evaluation of the minor victims—$900 per child. Assuming the children require at least one session of counseling per month, the cost of counseling for each minor victim for only one year will be greater than $10,000. Accordingly, Dr. Jereb's restitution estimate of $97,900 per minor victim would cover approximately ten years of treatment, which is surely not sufficient to make the minor victims whole.

Because the minor victims of these horrific crimes usually lack sufficient resources to support the type of extensive physical and psychological evaluation necessary to determine a proper amount of restitution, there is an obvious need for a national consensus as to a minimum amount of restitution required to compensate victims of child sexual exploitation. A minimum amount of restitution would be an appropriate award in cases where the victim is unable to present any support for future treatment costs or where the evidence before the Court supports an amount less than the established minimum. At the very least, there is a need for a consensus as to a set of guidelines that will aid the judiciary in determining the appropriate amount of restitution for victims in child exploitation cases.

A minimum restitution amount or a set of guidelines would further Congress's goal of compensating child sexual exploitation victims for injuries they have sustained and will continue to sustain for the rest of their lives, and will maximize the recovery of the victim while minimizing the administrative overhead associated with victim attorney's fees, expert fees, and other fees necessary to prove the amount of the victim's loss with reasonable certainty. In order to avoid future litigation contesting the established minimum or guidelines, these guidelines need to be formulated by a group

of experts viewed as authoritative in this field. After having conferred with some of the leading authorities on child sexual exploitation, the Court has determined that the best solution is for the Federal Government to support the development of a minimum restitution amount or a set of guidelines through the Office for Victims of Crime ("OVC") of the U.S. Department of Justice or delegate the task to some other appropriate group or organization. However, until such a national consensus is reached as to a minimum amount of restitution in these cases, the Court must look elsewhere for guidance.

The Government suggests that 18 U.S.C. § 2255(a),[8] the civil remedies statute for victims of the sexual exploitation of children, provides a minimum amount of damages sustained by the minor victims in this case. Anticipating the difficulty, if not impossibility, in calculating the amount of damages sustained by victims of child sexual exploitation, Congress mandated that a victim's damages under section 2255 are deemed to be no less than $150,000 in value. Section 2255 was amended in 2006 by Masha's Law, which is part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 707, 120 Stat. 587, 650 (2006). Masha's law increased the minimum damages amount from $50,000 to $150,000 and broadened the language of section 2255 to allow adults to recover for damages sustained while they were a minor. *Id.* Congress's most recent estimate of the minimum amount of damages sustained by a victim of sexual exploitation gives the courts a great deal of guidance as to the amount Congress found to be the minimum amount of damages sustained by child pornography victims.

---

[8] Section 2255(a) provides:
Any person whom while a minor, was a victim of a violation of section . . . 2252 . . . of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

Baker argues against the applicability of the civil remedies statute in a criminal restitution matter, noting that section 2255 discusses "damages," and "damages" and "restitution" are not always the same thing. The Court recognizes that there may be instances where total damages may exceed restitution, but the Court is not persuaded that the minimum damages amount set forth in section 2255 is greater than an amount of restitution that would make the minor victims in this case whole. In addition, the Government contends that the minimum amount of damages mandated by 18 U.S.C. § 2255(a) applies to each image produced by Baker. In other words, the Government argues that restitution in this case should be equal to $150,000 times 55 photos, or $8,250,000. Baker disagrees with this interpretation of section 2255(a) and the Court is inclined to agree, finding no basis in the record for the Government's interpretation of section 2255(a).

The $150,000 basis or floor established by Congress in section 2255 has a reasonable basis in legislative history and is in line with available literature and what other cases have determined. Again, the legislatively mandated directive in awarding restitution in child pornography cases is always to make the victim whole. While a $150,000 minimum will not make every minor victim whole, it will go a long way toward providing counseling and medical care to help that child recover from the harm he or she has suffered. A restitution amount of $97,900 per minor victim is well below the statutorily mandated amount of damages set forth in section 2255(a). Because Congress deemed $150,000 to be the minimum amount of damages sustained by a victim of child sexual exploitation, any restitution amount below $150,000 will fall short of making these minor victims whole. Accordingly, the Court finds that Congress's statutorily mandated minimum of $150,000 is a reasonable estimate of the future treatment costs for a victim of sexual exploitation.[9] *See Pearson*,

---

[9] The Court in this particular case relies on Congress's mandated minimum damage amount of $150,000 set forth in 18 U.S.C. § 2255(a) in awarding the minor victims restitution in this case. While this amount is surely far less than the actual losses each child has or will sustain in this case given the evidence before the Court, it is the best and most reliable basis for awarding restitution. By using the congressionally mandated minimum, the Court seeks

570 F.3d at 487 (requiring that a "final restitution order reflect[] a reasonable estimate of the cost of future counseling").

In addition, the Court finds that Dr. Jereb's initial evaluation of the children was necessary to treat and evaluate the minor victims in this case. Based on the record before the Court, the minor victims received a diagnostic interview exam, psychological testing and psychotherapy, totaling $2,700. There was some discussion at the restitution hearing as to whether Medicaid would cover these costs, but section 2259 specifically prohibits the Court from declining to order restitution because the victim receives compensation for his or her injuries from another source. 18 U.S.C. § 2259(b)(4)(B). Accordingly, $900 per minor victim for past treatment costs is also a proper restitution award under the relevant statute.

Lastly, the Court appointed Mr. Hill as attorney ad litem in this case to represent the minor victims in this case. He has done an exceptional job under less than ideal circumstances and with limited resources. When asked at the restitution hearing, Mr. Hill stated that his hourly fee was $300 and that he had before that day expended 27 hours of work on this case. The Court estimates that an additional four hours are appropriate to cover the length of the hearing and any other tasks necessary for Mr. Hill to follow the case to completion. Mr. Hill's reasonable attorney's fee of $9,300 ($300/hr for 31 hrs) is specifically recoverable as mandatory restitution pursuant to 18 U.S.C. § 2259(b)(3)(E). Accordingly, the Court awards $3,100 to each minor victim in attorney's fees.

## CONCLUSION

On September 22, 2009, the Court ordered that Baker pay restitution to the minor victims in this case as follows:

(1) Defendant shall pay restitution totaling $462,000 to the following victims in the

---

to strike a balance between making the victims whole and protecting Baker's rights.

following amounts:

    (A) "John Doe"    (I) $150,000 (future treatment and counseling costs)

                                (ii) $900 (past treatment and counseling costs)

                                  (iii) $3,100 (attorney fees and costs incurred by attorney ad litem Wes Hill on minor victims' behalf)

    (B) "Chris Doe"    (I) $150,000 (future treatment and counseling costs)

                                    (ii) $900 (past treatment and counseling costs)

                                  (iii) $3,100 (attorney fees and costs incurred by attorney ad litem Wes Hill on minor victims' behalf)

    (C) "Jane Doe"    (I) $150,000 (future treatment and counseling costs)

                                    (ii) $900 (past treatment and counseling costs)

                                  (iii) $3,100 (attorney fees and costs incurred by attorney ad litem Wes Hill on minor victims' behalf)

(2) The restitution payments to begin immediately. Any amount that remains unpaid when the Defendant's supervision commences is to be paid on a monthly basis at a rate of at least 10% of the Defendant's gross income, to be changed during supervision, if needed, based on the Defendant's changed circumstances, pursuant to 18 U.S.C. § 3664(k). Additionally, at least 50% of receipts received from gifts, tax returns, inheritances, bonuses, lawsuit awards, and any other receipt of money (to include, but not limited to, gambling proceeds, lottery winnings, and found money) must be paid toward the unpaid restitution balance within 15 days of receipt. Restitution is payable by cashier's check or money order made out to the United States District Court and forwarded to the Fine and Restitution Section, U.S. Courts, P.O. Box 570, Tyler, Texas 75710.

Baker Restitution Order, Docket No. 44.

The Court further **ORDERS** that as restitution amounts are collected from the Defendant, the Fine and Restitution Section of the United States District Court in Tyler, Texas shall hold any restitution payments in each victim's name for the benefit of each minor victim. Prior to reaching the age of 18, the minor victims, the legal guardian of the minor victims, or any certified health care provider or health care professional may petition the Fine and Restitution Section for a release of funds to cover past or future medical services relating to physical, psychiatric, or psychological care resulting from the harm caused to the minor victims as a result of Defendant's crime. The Fine and Restitution Section may approve any request for funds at or below $500 when presented with a billing statement or an estimate of charges from a certified health care provider or health care professional. If approved, the Fine and Restitution Section shall issue a check directly to the health care provider or health care professional. Any request for funds greater than $500 will require the Court's approval. Upon reaching the age of 18, the minor victims may petition the Fine and Restitution Section for the balance of their restitution accounts, and the Fine and Restitution Section may release the funds directly to the minor victim.

**So ORDERED and SIGNED this 7th day of December, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**